IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No.: 23-cr-50024 |
| v. | Judge Iain D. Johnston |
| Bradley Walters | |

MEMORANDUM OPINION AND ORDER

State law enforcement agents executed a search warrant at a location associated with Defendant Bradley Walters, discovering 400 grams of fentanyl and 50 grams of methamphetamine. Dkt. 53. The officers then arrested Walters. Walters moves to suppress the drugs discovered at his business, asserting that the officers lacked probable cause to search the premises. He also seeks to suppress the statements made after his arrest. For the following reasons, the Court denies his Motion.

**Background**[1]

On October 22, 2022, Deputy Sheriff Giorgi Arbisi sought a search warrant from an Illinois circuit court judge.[2] Dkt. 37-1. In his supporting affidavit, Arbisi testified that he had been with the Winnebago County Sheriff's Department for three

---

[1] In determining whether the state court judge reasonably found probable cause, the Court only considers the information included in Arbisi's affidavit, not the additional facts the Government includes in its Response. The Court doesn't consider whether probable cause existed without the warrant.
[2] The Winnebago County Sheriff's Office initially brought charges against Walters. Those charges were dismissed after this federal indictment was returned against him.

1

years and was a member of the Narcotics Unit. *Id.* He received training in drug investigations and was involved in the execution of many search warrants. *Id.*

Arbisi "started receiving information from a confidential informant" in October 2022. *Id.* That CI—who Arbisi referred to as "they/them"—was "proven to be reliable and [had] given information that has led to arrests."[3] *Id.* The CI told Arbisi that illegal drug sales were occurring at the "Black Sheep Vintage," located at 13624 Metric Rd., in Roscoe, Illinois, and that they had previously purchased drugs from that location. *Id.*

According to the CI, Black Sheep Vintage was Walter's business. *Id.* Arbisi testified that Walters had a criminal history that included multiple drug and firearms related charges. *Id.* The CI was able to describe Walters as a "white male" in his "late forties and around one hundred and seventy pounds." *Id.* After Arbisi showed the CI Walter's mugshot, the CI confirmed that Walters was the individual who sold the CI drugs.

No more than three days before Arbisi signed the affidavit, he arranged a "controlled purchase" of Adderall and Xanax from Black Sheep Vintage. *Id.* Arbisi met and searched the CI at a predetermined location, finding no narcotics or money. Arbisi then gave the CI cash to purchase the controlled substances. *Id.* Arbisi and and another deputy drove the CI to an "area" around Black Sheep Vintage. *Id.* "With

---

[3] The Government says "they/them" referred to a single individual, the pronouns used to mask the individual's identity. Dkt. 53 at 16. Defendant asserts that it referred to multiple sources, which he contends would undermine probable cause. Dkt. 37 fn. 1. Having signed multiple search warrants using the "they/them" moniker for this very purpose, the Court finds that the Government has the better argument. What's more, the affidavit regularly refers to "the CI" in the singular.

2

a clear and unobstructed view," another deputy observed the CI walk to 13624 Metric and enter an attached garage. *Id.* That deputy told Arbisi that the door was "marked with the numbers 13624." *Id.* Approximately ten minutes later, the CI left the store. *Id.* The CI walked directly back to Arbisi and another deputy and handed Arbisi two clear bags with pills that later tested positive for a probable presence of Adderall and Xanax. *Id.* The CI told Arbisi that they purchased the narcotics from Walters with the money Arbisi provided. *Id.*

\*\*\*

In Arbisi's affidavit, he "further described" the Black Sheep Vintage premises, as a "dark tan brick with tan siding one story multi-unit business, the specific area to be searched is all rooms and attached garage or 13624 Metric Rd. The numbers 13624 is described as being located on south side door, with a glass door and the numbers '13624' clearly displayed on the door." As noted above, according to the affidavit, another deputy similarly told Arbisi that "13624" was displayed on a glass door. *Id.*

However, Defendant notes that, at the time of the controlled purchase as well as when Arbisi sought the warrant, the glass door with the numbers "13624" on it no longer existed. Dkt. 37 at 10. In the evening of October 22—a day or so before the controlled purchase and the subsequent warrant request—the store was allegedly robbed and the glass door was shattered. *Id.* The Government concedes that the door was shattered before the operation. *See* dkt. 53 at 18 (arguing that the "[i]naccurate [d]escription of the [p]remises" doesn't invalidate the warrant).

3

Finding probable cause, Seventeenth Judicial Circuit Associate Judge Debra Schaffer signed the warrant on October 24, 2022 and officers executed it the next day.

**Analysis**

Probable cause exists when there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *U.S. v. Sanchez-Jara*, 889 F.3d 418, 421 (7th Cir. 2018). A court's finding of probable cause "carries a strong presumption of correctness." *See Sanchez-Jara*, 889 F.3d at 421.

The information in Arbisi's affidavit showed a "fair probability that contraband or evidence of a crime" would be discovered at 13624 Metric. A CI who had given reliable information in the past told officers that they had personally purchased drugs at the location. The CI said that Bradley Walters—who had a criminal history involving guns and drugs—was the seller. And, most notably, officers conducted a controlled purchase, personally observing the CI enter 13624 Metric with cash and with no drugs but return with drugs but no cash. The CI then told the officers that those drugs were purchased from Walters. Though Arbisi's affidavit could have been stronger, the state court judge reasonably found probable cause.

Walter's arguments don't change that conclusion. He first contends that the CI wasn't reliable. "When the information used to support a finding of probable cause is derived from a CI's tip 'the legitimacy of a probable cause determination turns on that CI's reliability, veracity and basis of knowledge.'" *United States v. Haynes*, 882 F.3d 662, 665 (7th Cir. 2018). Relevant factors include whether the informant had firsthand knowledge, provided sufficient details, relayed subsequently corroborated

4

information, or testified at a probable cause hearing. *Id.* No single factor is dispositve. *United States v. Johnson*, 289 F.3d 1034, 1039 (7th Cir. 2002)

A controlled purchase will weigh heavily in the reliability analysis. In *Haynes*, the Seventh Circuit held that a CI—who also didn't testify before the issuing judge—was reliable, because "[m]ost significantly, the deputies corroborated the story with their own investigation, by conducting surveillance and executing a controlled buy." *Id.*; *see also United States v. Smith*, 24-cr-50023, 2025 U.S. Dist. LEXIS 82045 (N.D. Ill. Apr. 30, 2025) (denying motion to suppress in-part because officers verified the CI's reliability during a controlled purchase).

In this case, the officers adhered to standard procedures and personally witnessed the CI enter 13624 Metric. They didn't need to personally observe him purchasing the drugs that he walked out of the store with, because probable cause only requires the *fair probability* of contraband, not irrefutable proof. It's also noteworthy that the CI personally witnessed the illegal sale. *See Johnson*, 289 F.3d at 1039 ("Foremost in our analysis is the fact the CI observed first-hand the defendant's illegal conduct, and we have often repeated that first-hand observations by a CI support a finding of reliability."). Plus, the CI had provided reliable information in the past and was able to correctly describe Walters. Finally, the affidavit noted that the controlled purchase occurred within the last three days, satisfying the temporal reference requirement. *See United States v. Garcia*, 528 F.3d 481, 486 (7th Cir. 2008) (describing seventy-two hours between observation and

5

affidavit as "short"). So, the officers' reliance on the CI supported the probable cause determination.[4]

The officers' error regarding the numbers on the glass door doesn't negate probable cause. Walters notes—and the Government doesn't dispute—that the glass door had been shattered days before the controlled purchase. Walters says that error matters for two reasons: (1) it dilutes the warrant's particularity, and (2) it qualifies as an erroneous statement such that the Court must hold a *Franks* hearing. *See* dkt. 37 at 8–12.

To the extent the lack of an address lessens a warrant's particularity, the other information more than makes up for it. Under the Fourth Amendment, a search warrant must "particularly describ[e] the place to be searched." *Muhammad v. Pearson*, 900 F.3d 898, 904 (7th Cir. 2018) (citing U.S. CONST. amend. IV). Officers satisfy that requirement when the "the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." *Id.* (citing *Steele v. United States*, 267 U.S. 498, 503 (1925)). In this case, officers named the business and identified it as a "dark tan brick with tan siding one story multi-unit business, the specific area to be searched is all rooms and attached garage or 13624 Metric Rd." Moreover, Walters doesn't contend that the address was incorrect, or that there was a risk that officers would search the wrong location.[5] So,

---

[4] The Court concludes that the warrant was based on probable cause. And it further holds that the address error doesn't indicate that the officers were lying or fraudulently obtained the warrant. So, the good faith reliance on a warrant exception would be proper as well.
[5] Walters asserts that the authorities "knew the premises in question had multiple separate units," and that they "did not believe or assert that Mr. Walters had access to the entire structure." Dkt. 37 at 9. Walters doesn't explain why the lack of a number on the door caused

6

because Arbisi's affidavit sufficiently described the premises, his minor error won't invalidate the warrant. *See United States v. McMillian*, 786 F.3d 630, 640 (7th Cir. 2015) ("This court has upheld search warrants that include 'minor technical errors or omissions . . . so long as there is no danger that the officers might inadvertently search the wrong place.'") (*citing United States v. Kelly*, 772 F.3d 1072, 1081 (7th Cir. 2014)).

Walters also contends that the address error constitutes an "erroneous statement," requiring a *Franks* hearing. A search warrant is void if the police obtain it "by deliberately or recklessly presenting false, material information to the issuing judge." *U.S. v. McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013) (citing *Franks v. Deleware*, 438 U.S. 154 (1978)). Under certain circumstances, "[T]he Fourth Amendment requires an evidentiary hearing on the veracity of a warrant affidavit." *McMurtrey*, 704 F.3d at 502. To obtain one, a defendant must "establish by a substantial showing that: (1) the affidavit contained a false material statement; (2) the affiant made the false statement intentionally, or with reckless disregard to the truth; and (3) the false statement is necessary to support the finding of probable cause." *U.S. v. Swanson*, 210 F.3d 788, 789–90 (7th Cir. 2000) (citation modified). "These elements are hard to prove, and thus *Franks* hearings are rarely held." *Id.*

---

any confusion. The warrant was clear that it applied only to all rooms in Black Sheep Vintage and its attached garage. Walters doesn't assert that officers searched beyond those parameters or were otherwise unsure about the permissible zones.

7

In this case, Walters highlights one factual error: No glass door bearing the numbers "13624" existed when the officers conducted the controlled purchase or sought the warrant. But that statement wasn't "material," because probable cause existed without it. As discussed above, Arbisi's affidavit was credible and demonstrated a fair probability that contraband would be found at the location. The officers established that the CI didn't have drugs, observed them enter the store, and monitored the CI as they regrouped with the officers. The false statement, therefore, didn't impact the probable cause determination. What's more, even if it were material, Walters doesn't sufficiently allege that it was made knowingly or recklessly.

To the extent the error suggests that the officers never conducted the controlled purchase or fabricated the observations, Walters doesn't carry his burden in establishing that by a "substantial showing." Instead, the error plausibly suggests that the officer made a mistake, something not unlikely since officers had visited the property earlier in the month and Walters had been a suspect before the glass broke.[6] That doesn't entitle him to *Franks* hearing. *See McMurtrey*, 704 F.3d at 502 ("Allegations of negligent or innocent mistakes do not entitle a defendant to a hearing."). Walters doesn't provide any other evidence to show that the officers lied about the incident or otherwise

---

[6] The Court considers the earlier investigations only in weighing whether Walters makes a substantial showing that the officers lied about the controlled purchase.

made the statement about the glass door recklessly. So, Walters doesn't establish that he's entitled to the "rare" *Franks* hearing.

Finally, Walters doesn't claim that he unknowingly or involuntarily waived his *Miranda* rights. He only asserts that the statements should be suppressed as fruit of the poisonous tree. The Court concludes, however, that the search was proper. So, it won't suppress the subsequent statements, which were made after officers advised Walters of his *Miranda* rights. Dkt. 37 at 14.

**Conclusion**

For the above reasons, the Court denies Walters' motion to suppress.

Entered: August 12, 2025        By:_____
                                                                      Iain D. Johnston
                                                     U.S. District Judge